## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOSEPH R CHAVEZ,

     *Plaintiff,*

v.                                                          No. 19-cv-1087-MV-GBW

PENITENTIARY OF NEW MEXICO,
JOHN GAY, HOPE SALAZAR,
JESSICA HERERRA, ALISHA
TAFOYA LUCERO, DENNIS MARES,
and DIANA BLANCHARD,

     *Defendants.*

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on the civil complaint filed by Plaintiff Joseph Chavez

in the First Judicial District Court, County of Santa Fe, State of New Mexico, and removed to this

Court by Defendants. (Doc. 1-1).

I.    <u>Background</u>

The following facts are taken from Plaintiff's Complaint. (Doc. 1-1). For the limited

purpose of this ruling, the Court assumes, but does not decide, that the facts alleged are true.

Plaintiff is a state prisoner in the custody of the New Mexico Corrections Department (the

"NMCD"). (Doc. 1-1 at 1). In the timeframe relevant to this Complaint, Plaintiff was an inmate at

the Penitentiary of New Mexico (the "Penitentiary"), housed in the "Alternative Sanctions Pod"

(the "ASP"). (Doc. 1-1 at 5). The ASP is, according to Plaintiff, essentially a disciplinary restrictive

housing pod, which is not established pursuant to, or governed by, prison regulations. (e.g., Doc.

1-1 at 5, 7-9).

Defendant John Gay is the warden of the Penitentiary. (Doc. 1-1 at 3). Defendant Alicia Tafoya Lucero is the deputy warden. (Id.). Defendant Hope Salazar is the unit manager responsible for the ASP.  (Id.). Defendant Jessica Herrera is the Penitentiary's disciplinary hearing officer. (Id.) Defendants Dennis Mares and Diana Blanchard are mail room supervisors. (Id.).

Having been found guilty of an unspecified offense in a prison disciplinary proceeding, Plaintiff was sanctioned to 30 days in restrictive housing followed by one year in the ASP. (Doc. 1-1 at 6). As the Court understands it, Plaintiff alleges that this constituted two sanctions, whereas NMCD policy related to the infraction he committed provides for a single sanction; and the recommended sanction was a loss of good time, not restrictive housing. (Doc. 1-1 at 6-7). Implying that the sanction he received should not have exceeded one year, he alleges that as a matter of NMCD policy, the time he spent in disciplinary housing—at least from the date on which the deputy warden signed and approved the sanction—should be credited toward the time he is required to spend in ASP. (Doc. 1-1 at 6-7).  He also alleges that he was not allowed to challenge his placement in the ASP, even though it was not the recommended form of discipline related to his infraction. (Doc. 1-1 at 5).

Inmates housed in the ASP live under more restrictions than general population inmates. Plaintiff alleges a panoply of restrictions including the following.  In the ASP, Plaintiff is locked in his room for 22 hours a day, seven days a week. (Doc. 1-1 at 9). He only receives 2 hours of tier time—half the time allowed for the general population inmates. (Doc. 1-1 at 8). This limited tier time sometimes impedes his access to the showers. (Doc. 1-1 at 5). Defendants allegedly refuse to allow Plaintiff his personal hair clippers or beard trimmers and refuse to provide community clippers for months at a time. (Doc. 1-1 at 9). Within the ASP unit, the electrical outlets in the cells are turned off, there is no television or microwave, there is no weekly library service, and there are

no board games. (Doc. 1-1 at 5-6). The ASP does not have a working phone. (Doc. 1-1 at 5). Plaintiff receives his mail two or three weeks past the postage date. (Doc. 1-1 at 9). He cannot visit his family. (Id.). He is not allowed access to education, drug rehabilitation, counseling courses, or religious services. (Id.) He cannot work or engage in programs—both of which are ways of earning incentive pay. (Id.). He cannot make debit memo orders to buy t-shirts, sweat suits, and shoes. (Doc. 1-1 at 8). Unlike disciplinary restrictive housing inmates, ASP inmates are not allowed to order from catalogs. (Id.). On weekends, Defendants allegedly refuse to take Plaintiff out for recreation. (Doc. 1-1 at 8). "Red Tag" ASP inmates are deprived of daily recreation altogether. [1] (Doc. 1-1 at 5).

Based on the foregoing and comparable additional allegations, Plaintiff alleges that "Defendants" are failing to comply with numerous state statutes, which variously govern the duties of the secretary of the corrections department and the administration of the Penitentiary and other corrections facilities.[2] (Doc. 1-1 at 4). He also alleges that Defendants are failing to follow numerous NMCD polices and "A.C.A." (an apparent reference to the American Correctional

---

[1] It is not clear from the Complaint whether Plaintiff is or has been a "Red Tag" inmate.

[2] Specifically, Plaintiff alleges that Defendants are "not abiding by" numerous provisions of the New Mexico Corrections Act, specifically, NMSA 1978 §§ 33-1-6 (governing the powers and duties of the secretary of the corrections department), 33-2-1 (requiring the corrections department to adopt rules concerning all prisoners committed to the penitentiary as shall best accomplish their confinement and rehabilitation), 33-2-10 (requiring the corrections department to make rules and regulations "for the government, discipline, and police of the penitentiary" and for the punishment of prisoners), 33-2-12 (identifying authorized visitors of the penitentiary), 33-2-12.1 (allowing the secretary of corrections to promulgate rules and regulations for family visits between minimum or medium security inmates confined at state correctional facilities and their families), 33-2-30 (governing the enforcement of lawful commands to prisoners, etc.), 33-2-32 (requiring the warden to keep a record of infractions of prison rules and regulations), 33-2-34 (governing prisoners' eligibility for earned meritorious deductions from their sentences), 33-2-36 (governing the forfeiture of earned meritorious deductions).

Association) standards.[3] (Doc. 1-1 at 4).

Plaintiff claims that Defendants are liable for violating his Eighth Amendment right to be free from cruel and unusual punishment and depriving him of his civil rights guaranteed by the Fourteenth Amendment. (Doc. 1-1 at 10). He seeks compensatory damages, a declaration that the Defendants' policies and procedures violated the Constitution, and injunctive relief including an order requiring the Penitentiary to shut down the ASP. (Id.).

II.     Analysis

A.     Standard of Review

Where, as here, a prisoner civil rights action is removed from state court, the Court screens the claims under 28 U.S.C. § 1915A. *See Carr v. Zwally*, 760 F. App'x 550, 554 (10th Cir. 2019) (§ 1915A provides for sua sponte review of inmate complaints against government officials, even if they are removed from state court). Under § 1915A, the Court must dismiss a prisoner civil action *sua sponte* "if the complaint ... is frivolous, malicious, or fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff is pro se, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106,

---

[3] For example, Plaintiff alleges that ASP is not governed by, or established pursuant to, a written NMCD policy, making it, and his referral to it as a sanction, unlawful. (Doc. 1-1 at 4-5). As another example, he alleges that NMCD policy allows the deprivation of one privilege for one year maximum, but not all privileges at once for a year, as was done here.

1110 (10th Cir. 1991).  While pro se pleadings are judged by the same legal standards as others, the Court can overlook the "failure to cite proper legal authority, … confusion of various legal theories, …, or … unfamiliarity with pleading requirements."  *Id.*  Moreover, if the initial complaint fails to state a claim, courts should generally grant leave to amend unless amendment would be futile.  *Id.*

B.  Plaintiff's §1983 Claims

Plaintiff's claims arise under 42 U.S.C. § 1983, which provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States.  Section 1983 allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. A §1983 claim is comprised of two essential elements: (1) a right secured by the Constitution or laws of the United States was violated and (2) the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000).

More specifically, a plaintiff must allege that each government official, through the official's own individual actions, has violated his Constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There also must be a connection between the official conduct and the Constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046. The complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*" so that each defendant has notice of the basis of the claims against them, particularly. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

1.  The Penitentiary is not a "Person" Under § 1983.

Plaintiff has identified the Penitentiary as a defendant in this lawsuit. The Penitentiary is a

facility operated by the New Mexico Corrections Department. It is well-established that the state—and by extension its executive departments and agencies—are excluded from the definition of "person" in the context of § 1983. *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011) ("arms of the state" such as state agencies "partake in the State's [sovereign] immunity[.]"); *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (a claim against a state penitentiary is barred by the Eleventh Amendment). Any §1983 claim against the Penitentiary must be dismissed.

2.   The Individual Defendants Cannot Be Sued in Their Official Capacity.

It appears that Plaintiff's claims against the remaining Defendants are brought against them in their personal capacities. If it is otherwise, and Plaintiff intended to state a claim against any of these Defendants in their *official capacities*, such claims cannot survive.  Though "state officials literally are persons[,] . . .  a suit against a state official in his or her official capacity . . . is no different from a suit against the state itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As such, "officials acting in their official capacities are [not] 'persons' under § 1983." *Id.* To the extent that any of Plaintiff's claims are brought against any of the Defendants in his or her official capacity, such claims must be dismissed.

3.   The Complaint Does Not Allege That Individual Defendants Violated Plaintiff's Constitutional Rights.

Plaintiff has identified six individual Defendants— Gay, Salazar, Herrera, Lucero, Mares, and Blanchard. While Plaintiff alleges various forms of wrongdoing by "Defendants" generally, he does not state how each (or any) Defendant, through his or her own individual actions, violated his Constitutional rights. *See Ashcroft*, 556 U.S. at 676 (in a § 1983 suit, the plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013) ("When

6

various officials have taken different actions with respect to a plaintiff," an "undifferentiated contention that 'defendants' infringed on his rights" does not suffice.); *Walker v. Mohiuddin*, 947 F.3d 1244, 1249-50 (10th Cir. 2020) (A plaintiff must "do more than show that [his] rights were violated or that defendants, as a collective and undifferentiated whole, were responsible for those violations."). From the allegation in the Complaint, it is difficult to discern who is allegedly responsible for any action or inaction that resulted in an alleged deprivation of Plaintiff's Constitutional rights. *Robbins*, 519 F.3d at 1250 ("[E]xactly *who* is alleged to have done *what* to *whom*" must be alleged in a complaint to provide notice to the defendants of the nature of the claims against them). For these reasons, Plaintiff's § 1983 claims against the individual Defendants are not viable as pled and must be dismissed without prejudice.

    4. <u>The Due Process Claims</u>

        a. <u>Violations of State Law are not Actionable Under § 1983.</u>

To the extent that Plaintiff's claims are based on Defendants' failure to abide by the numerous state statutes identified in his Complaint, the claims are not cognizable under § 1983. "§ 1983 does not . . . provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law." *Jones v. City & Cty. of Denver, Colo.*, 854 F.2d 1206, 1209 (10th Cir. 1988); *D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010); *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002). The state statutes enumerated in Plaintiff's complaint, which pertain largely to NMCD's governance and administration, do not correspond to federal Constitutional rights. To the extent that Plaintiff's claims are based on Defendants' failure to abide by those statutes, they are not cognizable under § 1983 and must be dismissed.

To the extent that Plaintiff intended to sue directly under the provisions of the Corrections

Act cited in his Complaint, these statutes do not create a private right of action that would allow him to bring such a claim. *See generally, Eisert v. Archdiocese of Santa Fe*, 207 P.3d 1156, 1165 (N.M. Ct. App. 2009) (noting that the absence of express language in a statute creating a private right of action indicates that the state legislature did not intend to create one).

b. <u>Plaintiff's Claims Based on Violations of Prison Regulations</u>

Prison regulations, standing alone, do not create liberty interests protected by the Due Process Clause of the Constitution. *Sandin v. Conner*, 515 U.S. 472, 480-83 (1995); *Gaines*, 292 F.3d at 1225; *Lehman v. McKinnon*, No. 20-1312, 2021 WL 4129229, *4 (10th Cir. Sept. 10, 2021). This is because many prison regulations are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin*, 515 U.S. at 481-82.

Nonetheless, there are certain circumstances in which prison regulations established by the state may create liberty interests protected by the Due Process Clause. *Id.* at 484.  But a plaintiff seeking to establish a due process violation based on an official's failure to abide by prison regulations "faces an uphill battle[.]" *Gaines*, 292 F.3d at 1225. Since "[p]risoners held in lawful confinement have their liberty curtailed by definition," *Wilkinson v. Austin*, 545 U.S. 209, 225 (2005), the interests are limited to "freedom from restraint . . . [that] imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Gaines*, 292 F.3d at 1225; *accord Requena v. Roberts*, 893 F.3d 1195, 1217–18 (10th Cir. 2018) ("In the prison context, a protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an atypical and significant hardship in relation to the ordinary incidents of prison life." (cleaned up).

In the Tenth Circuit, the issue of whether segregation imposes such an atypical and

significant hardship is informed by general, non-dispositive factors such as whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate." *Requena*, 893 F.3d at 1217–18 (cleaned up); *Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007). Based on the allegations in the Complaint, the Court cannot discern whether indicia of atypical and significant hardship are present. Plaintiff will be granted an opportunity to file an amended complaint. If he chooses to do so, he should include all relevant facts that could satisfy this requirement.

For the foregoing reasons, Plaintiff's due process claims, as presently pled, are not viable and will be dismissed without prejudice.

5. Plaintiff's Eighth Amendment Claims

The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Id.* at 348; *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

To prove that prison conditions amount to cruel and unusual punishment, a plaintiff must satisfy an objective requirement and a subjective requirement. That is, he must prove (1) that the condition complained of is, "objectively, sufficiently serious" that it "results in the denial of the minimal civilized measure of life's necessities"; and (2) that the prison official's state of mind was one of "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834

(1994). In other words, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff has not alleged that a particular prison official was aware of, but remained deliberately indifferent to, an excessive risk to his health or safety. As such, the claim is not cognizable and must be dismissed. If Plaintiff chooses to file an amended complaint including an Eighth Amendment claim, he should include specific allegations of fact to show that he was subjected to conditions that were objectively, sufficiently serious that they resulted in the denial of the minimal civilized measure of life's necessities, and specific allegations of fact to show that specific, identified individuals knew of and disregarded those conditions.

C.   Injunctive Relief is not Available.

Plaintiff has not adequately alleged a constitutional violation. He is therefore not entitled to injunctive relief under § 1983. *Vann v. Okla. State Bureau of Investigation*, 28 F. App'x 861, 864 (10th Cir. 2001).

D.   Plaintiff's Tort Claims are not Actionable Under the New Mexico Tort Claims Act.

Plaintiff also seeks redress under state tort law for the violation of prison regulations, improper disciplinary proceedings, constitutional violations, intentional and malicious action, and the violation of prison rights. The state of New Mexico has waived sovereign immunity for specific torts as set forth in the New Mexico Tort Claims Act ("NMTCA"). *See* NMSA 1978 §§ 41-4-4 through 41-4-12. A tort for which immunity has not been expressly waived in the NMTCA is not actionable against the state, a state entity, or their employees. *Davis v. Bd. of Cty. Commr's of*

*Dona Ana Cty.*, 987 P.2d 1172, 795 (N.M. Ct. App. 1999).

Immunity from liability for some of the torts identified in Plaintiff's complaint (i.e. "failure to comply with duties established pursuant to state law or any other deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States" and malicious abuse of process), has been waived for conduct by "law enforcement officers while acting within the scope of their duties." *See* NMSA 1978 § 41-4-12. It is well established, however, that *corrections officers* who hold convicted persons in custody are not "law enforcement officers" such that the waiver of immunity identified in § 41-4-12 applies to their conduct. *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1254-56 (D.N.M 2010); *Callaway v. N.M. Dep't of Corrs.*, 875 P.2d 393, 397 (N.M. Ct. App. 1994) (affirming the trial court's determination that corrections officers are not law enforcement officers for purposes of waiver of immunity under the NMTCA). To the extent that Defendants' conduct was tortious as alleged by Plaintiff, they are protected from liability as a matter of sovereign immunity. The claims will be dismissed accordingly.

E.   Plaintiff May File an Amended Complaint.

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a 90-day deadline within which to file an amended complaint. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

IT IS ORDERED:

(1)    Each of the claims set forth in the complaint (Doc. 1-1) are DISMISSED without prejudice; and

(2)    Plaintiff is granted leave to file an amended complaint within 90 days of the entry

of this Memorandum Opinion and Order. Failure to do so may result in dismissal of this case without further notice.

_____
HONORABLE MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE